UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In Re: ) | |
| ) | **Chapter 7** |
| **BRUCE E. ALLEY** and ) | |
| **JANET M. SULLIVAN,** ) | Case No. 09-21500 |
| ) | |
| **Debtors** ) | |
| ************************************) | |
| **BRUCE E. ALLEY** and ) | |
| **JANET M. SULLIVAN** ) | Adversary No. 13-2070 |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| v. ) | |
| ) | |
| **SAXON MORTGAGE** ) | |
| **SERVICES, INC.** as acquired by ) | |
| Ocwen Loan Servicing, LLC, ) | |
| ) | |
| **OCWEN LOAN SERVICING, LLC,** ) | |
| and ) | |
| **BANK OF AMERICA, N.A.** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OF DECISION**

This matter comes before the Court on defendant Ocwen Loan Servicing, LLC's ("Ocwen") motion to dismiss (the "Motion") (Docket Entry ("DE") 23) the adversary complaint (the "Complaint") (DE 1) of debtors Bruce E. Alley and Janet M. Sullivan (the "Debtors").

Ocwen moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.[1]

For the reasons set forth below, the Motion is denied.

## I. JURISDICTION AND VENUE

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and the general order of reference entered in this district pursuant to 28 U.S.C. § 157(a).  D. Me. Local R. 83.6(a).  Venue here is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A).[2]

## II. ALLEGATIONS IN THE COMPLAINT[3]

The Debtors filed a joint Chapter 13 bankruptcy petition on September 25, 2009.  At that time, they owned real estate in Douglas, Massachusetts, which was subject to a first mortgage held by Bank of America, N.A.  The mortgage secured a loan that was serviced by BAC Home Loans Servicing, LP ("BAC").

In May of 2010, the Court granted BAC's motion for relief from stay (DE 46, *In Re Alley*, Case No.: 09-21500), permitting BAC to enforce its rights under state law against the Douglas property. The relief from stay order did not give BAC permission to proceed against the Debtors personally.  BAC later transferred the servicing of the Debtors' mortgage to Saxon Mortgage Services, Inc. ("Saxon").

---

[1] Unless otherwise indicated, citations to statutory sections and chapter numbers refer to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. (the "Code"), and citations to rule numbers refer to the Federal Rules of Bankruptcy Procedure ("F.R.Bank.P." or "Rule").

[2] The Debtors allege this is a core proceeding (DE 1, Complaint, ¶ 1) and Ocwen has not disputed this allegation in its responsive pleading.  *See* D. Me. LBR 7012-1.

[3] The Court reviewed the allegations set forth in the Debtors' Complaint to see if it contains sufficient factual matter to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

On or about October 17, 2011, Saxon delivered a mortgage statement to the Debtors stating that they owed a mortgage payment of $1,969.20 and arrearage of $57,891.01. In response, the Debtors informed Saxon they were in bankruptcy relief and provided their counsel's contact information.

In May of 2012, Saxon, as servicing agent, delivered notices to the Debtors indicating that they owed additional sums for (a) force placed insurance and (b) new monthly mortgage payment amounts. The next month, Ocwen acquired the servicing rights of the loan from Saxon. The Debtors received their Chapter 13 discharge on January 14, 2013.

At various times from July of 2012 through October of 2013, Ocwen wrote to the Debtors seeking payment of the loan and reimbursement for insurance. During this same period, Debtors' counsel wrote to Ocwen three times demanding that it cease contact with the Debtors and informing Ocwen of the bankruptcy filing, the automatic stay, and the discharge injunction provisions of the Code.

In December of 2013, Debtors filed the Complaint, alleging Ocwen willfully and intentionally violated 11 U.S.C. §§ 362 and 524, and seeking actual, punitive, and compensatory damages including costs and attorney's fees pursuant to §§ 105, 362, and 524.

## III. DISCUSSION

Ocwen seeks the dismissal of the Complaint on the grounds that it fails to state a claim upon which relief can be granted.

> To survive a motion to dismiss for failure to state a claim, a complaint need not present "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." The precise parameters of the plausibility standard are "still a work in progress," but, at bottom, a complaint's non-conclusory factual content must "allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". An "unadorned, the-defendant-unlawfully-harmed-me accusation" will not do.

*Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 638-39 (1st Cir. 2013) (citations omitted).

Two of the fundamental underpinnings of the Code are the automatic stay and the discharge injunction. The automatic stay has broad application and prevents creditors from seeking to collect a pre-petition debt from debtors or assets of the estate. 11. U.S.C. § 362(a). The discharge injunction safeguards the "fresh start" of debtors by permanently enjoining creditors from collecting discharged debts. *Bessette v. Avco Fin. Services, Inc.*, 230 F.3d 439, 443-44 (1st Cir. 2000).

Here, Ocwen complains that the Debtors chose the wrong procedure by which to protest Ocwen's actions.[4] It contends that the Complaint is actually a single count proceeding for contempt and therefore should be commenced, not through the adversary proceeding process established by Part VII of the Rules of Bankruptcy Procedure, but rather by motions practice in accordance with Rule 9020.[5] In furtherance of its argument, Ocwen maintains that adversary proceedings are limited to the ten specific proceedings enumerated in Rule 7001[6] and because

---

[4] Ocwen also raises other arguments as to why the Court should dismiss the Complaint; (a) adversary proceedings incorporate more pre-trial procedures and thus are more expensive than motions practice, and (b) the administration of an adversary proceeding causes a larger drain on court resources. As to the first, whether the matter proceeds forward by adversary proceeding rather than motion practice is a distinction with no meaningful difference. For example, Rule 9014(c) incorporates the heart and soul of the Part VII Rules (especially discovery which is the primary engine of increased pre-trial expense) into motion practice. As to the second point, it makes no difference from a case administration perspective whether a contempt matter is pursued by motion or complaint. Further, though these arguments, if correct, might be valid arguments for developing public policy, they are not sufficient to successfully support a motion to dismiss.

[5] F.R.Bankr.P. 9020 provides: "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest."

[6] F.R.Bankr.P. 7001 provides: "An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

> (1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002;
>
> (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d);

actions for contempt are not among them, the Complaint, arising in the context of an adversary proceeding, must be dismissed.[7]

Although this Court is mindful of decisions from other courts which support, in whole or part, Ocwen's argument,[8] the First Circuit and this Court have an established history of permitting aggrieved debtors to seek relief for alleged discharge violations through adversary proceedings. *See Bessette,* 230 F.3d 439; *Collins v. Wealthbridge Mortg. Corp., et al (In re Collins*, 474 B.R. 317, 319 (Bankr. D.Me. 2012); *Canning v. Beneficial Maine, Inc., et al (In re Canning)*, 442 B.R. 165 (Bankr. D.Me. 2011), *aff'd*, 462 B.R. 258 (1st Cir. BAP 2011), *aff'd*,

---

(3) a proceeding to obtain approval under §363(h) for the sale of both the interest of the estate and of a co-owner in property;

(4) a proceeding to object to or revoke a discharge, other than an objection to discharge under §§727(a)(8), 1 (a)(9), or 1328(f);

(5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan;

(6) a proceeding to determine the dischargeability of a debt;

(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;

(8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;

(9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or

(10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. §1452."

[7] Though the essence of the Motion concerns the alleged discharge violations, Ocwen also argues that to the extent that the Complaint seeks relief for violations of §362 it must be dismissed because it does not plead any facts stating such violations. The Court disagrees and finds that the allegations set forth in paragraphs 12, 13, 15, 16, 19, 20, 21, 22, 23, 26, 27, 28, 29, and 30 involve post-stay, pre-discharge conduct and when viewed through the motion to dismiss standard are sufficient to defeat the Motion.

[8] The Third, Sixth, and Ninth Circuits have held that debtors complaining of discharge injunction violations may not proceed by adversary proceeding relying on § 105. *See Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert)*, 411 F.3d 452 (3rd Cir. 2005); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000); *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186 (9th Cir. 2010); s*ee also Cox v. Zale Delaware, Inc.*, 239 F.3d 910 (7th Cir.2001); *In re Laudani*, 506 B.R. 19 (Bankr. D. Mass. 2014); *Whitaker v. Bank of Am. (In re Whitaker)*, No. 09-50301, 2013 WL 2467932 (Bankr. E.D. Tenn. June 7, 2013); *Tenczar v. Gable (In re Tenczar)*, 466 B.R. 32, 33 (Bankr. D. Mass. 2012).

706 F.3d 64 (1st Cir. 2013); *Pratt v. Gen. Motors Acceptance Corp.* (*In re Pratt*), 324 B.R. 1 (Bankr. D.Me. 2005), *aff'd*, 2005 WL 1961341 (D. Me. 2005), *rev'd*, 462 F.3d 14 (1st Cir. 2006).

The *Bessette* Court noted that § 105 empowers the bankruptcy court to address violations of the discharge injunction issued pursuant to § 524.[9]

> [Section] 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have. Those contempt powers inherently include the ability to sanction a party. . . . [A] bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages for the appellant in this case if the merits so require. Consistent with this determination, bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates § 524.

230 F.3d at 445 (citations omitted).[10]

Though the *Bessette* decision was issued fourteen years ago, none of the applicable Code sections (105 or 524) or Rules (7001 or 9020) have changed in any meaningful way which would alter its logic or applicability to matters such as those presented here. *See In re Miller*, No. 12-20873, 2014 WL 2012828 (Bankr. W.D. Mo. 2014); *Kilbourne v. CitiMortgage, Inc. (In re Kilbourne)*, 507 B.R. 219, 224 (Bankr. S.D. Ohio 2014); *Ricketts v. Bank of America Corp. (In re Ricketts)*, No. 13-1022-BAH, 2013 WL 6858941 (Bankr. D.N.H. 2013); *Vil v. Poteau*, No. 11-cv-11622-DJC, 2013 WL 3878741 (D. Mass. 2013); *Otero v. Green Tree Svcg., LLC (In re*

---

[9] *Bessette* reached that conclusion without deciding whether § 524 grants debtors a private right of action for discharge injunction violations as § 362(k) does for automatic stay violations.

[10] From another perspective, when a bankruptcy court administers sanctions for a discharge injunction violation pursuant to § 105, it might do so solely pursuant to its statutory contempt powers, and not its inherent contempt powers. The *Bessette* Court noted the distinction between the discharge injunction and an order ". . . individually crafted by the bankruptcy judge, in which that judge's insights and thought processes may be of particular significance." 230 F.3d at 446. The discharge injunction is entirely a creature of statute, created by Congress and not by judges. The injunction is the same for any debtor filing under the same Chapter, and is enforceable by any court with jurisdiction over the bankruptcy case and the parties. Thus, the sanctions issued in response to a § 524 violation constitute broader equitable relief referred to in § 105, which may explicitly be sought in an adversary proceeding under Rule 7001(7).

*Otero)*, 498 B.R. 313, 320 (Bankr. D.N.M. 2013)(dicta); *Motichko v. Premium Asset Recovery Corp. (In re Motichko)*, 395 B.R. 25, 33 (Bankr. N.D. Ohio 2008).

As Judge Woods observed in *Motichko*:

> To dismiss on procedural grounds alone would be to elevate form over substance. This is particularly true where—as here—an adversary proceeding provides more procedural protection for the defendant than does a contested matter brought by way of motion. Given that this Court has the discretion to require the more structured discovery process of an adversary proceeding in a contested matter, the Court sees no reason to require Debtors to dismiss this adversary proceeding and refile it as a contested motion. Such unnecessary "hoop jumping" would merely serve to increase the costs of litigation, without providing any real benefit to either party.

395 B.R. 25 (footnotes and citations omitted).

## IV. CONCLUSION

Reading the Complaint in the light most favorable to the Debtors, they seek equitable relief for a violation of the automatic stay and the discharge injunction. They allege that Saxon's post-petition and pre-discharge communications were attempts to collect a pre-petition debt. They also allege that Ocwen's post-discharge communications were attempts to collect a debt that was discharged. These allegations state a plausible claim. This Court has the power to provide such relief under § 105 and the Debtors may seek it by filing an adversary proceeding. This is not to say that proceeding by way of Rule 9020 would be inappropriate but it is not required. Dismissal is therefore not in order.

An order denying the Motion shall subsequently enter.

Dated:  June 30, 2014                                /s/  Peter G. Cary_____
                                                     Judge Peter G. Cary
                                                     United States Bankruptcy Court
                                                     for the District of Maine